IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Benny Ray Barfield,<br>formerly # 261966,<br>also known as Benny Barfield,<br><br>                Plaintiff,<br><br>    vs.<br><br>The South Carolina Dept. of<br>Mental Health; Holly Scutturo,<br>SVP Director; and John MaGill,<br>Director,<br><br>                Defendants. | Civil Action No. 6:15-186-PMD-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

This matter is before the court on the defendants' motion for summary judgment (doc. 32). The plaintiff, who is proceeding *pro se*, is confined in an institution of the South Carolina Department of Mental Health pursuant to South Carolina's sexually violent predator ("SVP") commitment statute.  In the event that a limitations issue arises, the plaintiff shall have the benefit of the holding in *Houston v. Lack*, 487 U.S. 266 (1988), because he is involuntarily confined.  *See Deans v. Wadman*, Civil Action No. 3:12-662-MGL-JRM, 2013 WL 6054481, at *4 (D.S.C. May 14, 2013), *adopted by* 2013 WL 6054481 (D.S.C. Nov. 15, 2013).   Under Local Civil Rule 73.02(B) (D.S.C.), pretrial proceedings in this action have been referred to the undersigned United States Magistrate Judge.

The defendants filed a motion for summary judgment (doc. 32) on June 12, 2015.  The undersigned thereafter issued a *Roseboro* order to apprise the plaintiff of dispositive motion procedure and of the consequences if he failed to respond adequately to the motion (doc. 33).  *See Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975).  The

plaintiff filed his response (doc. 35) with attachments (doc. 35-1 through doc. 35-4) on July 6, 2015.  The defendants filed a reply (doc. 41) on July 30, 2015.

The plaintiff alleges deliberate indifference to his medical and dental needs. He also complains about differences between the SVP unit at the Broad River Correctional Institution (where he was formally confined) and the Columbia Regional Care Center where he is currently confined, and about the lack of a paying job.

The defendants indicate that the plaintiff is a mental patient civilly committed to the South Carolina Department of Mental Health as part of the Sexually Violent Predator Treatment Program ("SVPTP") (doc. 32-1 at 1), is eighty-four years of age, and suffers from numerous chronic health issues (*id*.).  The plaintiff was transferred in 2009 from the Broad River Correctional Institution ("BRCI"), where the majority of SVP residents are housed, to the Columbia Regional Care Center (*id*.).  According to the defendants, the Columbia Regional Care Center "is a private facility that provides medical, mental health and behavioral treatment for detainees who require a higher level of medical care including in-patient and hospital care that cannot be provided in a typical corrections-type facility (*id*.). Correct Care of South Carolina, LLC ("Correct Care"),[1] operates the Columbia Regional Care Center and is a contract provider of services to the South Carolina Department of Mental Health (*id*.).  The defendants state that the plaintiff was transferred to the Columbia Regional Care Center because his medical and geriatric needs cannot be met at the BRCI (*id*. at 2).  The defendants state that the plaintiff has not been provided a lower denture because the then-resident dentist, Dr. Henry Marshall, determined that the plaintiff lacked a sufficient lower ridge to hold a lower denture (*id*.).

---

[1]Throughout his complaint and response to the motion for summary judgment, the plaintiff refers to his current place of confinement as GEO Care (*see* docs. 1 and 35). According to the affidavit of Holly Scaturo, the Director of the SVPTP, Correct Care, which operates the Columbia Regional Care Center, was formerly known as Geo Care of South Carolina, LLC (doc. 32-2 at 2). The undersigned will refer to the plaintiff's place of confinement as the Columbia Regional Care Center.

2

In their motion for summary judgment, the defendants argue that the South Carolina Department of Mental Health is not subject to suit under 42 U.S.C. § 1983, and that in any event they have not violated the applicable professional judgment standard. They further contend that the plaintiff's claim for his denture is time-barred, but regardless, his diet and care are appropriate for his condition. They deny violating his equal protection rights, and state that they have no responsibility to employ the plaintiff.

In support of their motion, the defendants submitted the affidavit of Holly Scaturo, Director of the SVPTP, (doc. 32-2 at 1–7); the contract between the South Carolina Department of Mental Health and the operator of the Columbia Regional Care Center (*id*. at 9–29); the plaintiff's treatment notes (*id*. at 31); a copy of a letter dated June 10, 2010, from Director Scaturo to the plaintiff (*id*. at 33); a copy of a Department of Mental Health statement on a resident's responsibility of medical bills (*id*. at 34–35); a copy of a letter dated January 4, 2011, denying the plaintiff's grievance appeal with respect to a lower denture (*id*. at 37); a copy of Department of Mental Health Policy No. 30 (June 2009) on eyeglasses, dentures, and hearing aids (*id*. at 38–40); a copy of Department of Mental Health Policy 18 on dental care (*id*. at 41–43); a copy of the plaintiff's soft food order dated January 9, 2014 (*id*. at 45); the plaintiff's medication reconciliation dated May 12, 2015 (*id*. at 47–48); and the plaintiff's body mass index calculation of 32.4, which classifies the plaintiff as obese (*id*. at 50).

In their reply, the defendants contend that the plaintiff has not refuted their evidence that the plaintiff is able to function with an upper denture (doc. 41 at 3). The defendants reiterate their contention that the plaintiff has not been treated differently than other SVPTP residents at the Columbia Regional Care Center (*id*. at 4) and note that the plaintiff has had a job there since January 2015 (*id*. at 4 n. 1). The defendants request that the summary judgment be granted and the complaint be dismissed *with prejudice* (*id*. at 5).

3

The plaintiff's response (doc. 35) in opposition to the motion for summary judgment is accompanied by various exhibits, some of which include exhibits submitted by the defendants and annotated by the plaintiff (doc. 35-1 through doc. 35-4). In his response the plaintiff argues, among other things, that his provided diet is insufficient and that Dr. Henry Marshal told him that he could make a lower denture if defendant Scaturo would "sign off," but she would not approve it.

### APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient

4

to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* Summary judgment is not "a disfavored procedural shortcut" but an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Celotex*, 477 U.S. at 327.

### South Carolina Department of Mental Health

The South Carolina Department of Mental Health is immune from suit under the Eleventh Amendment, which divests this court of jurisdiction to entertain a suit brought against the State of South Carolina or its integral parts, such as a state agency or department. *See, e.g., Fed. Maritime Comm'n v. South Carolina State Ports Auth.*, 535 U.S. 743, 744–45 (2002); and *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984) (although express language of Eleventh Amendment only forbids suits by citizens of other States against a State, Eleventh Amendment bars suits against a State filed by its own citizens). The *Ex Parte Young* exception to the Eleventh Amendment is not applicable in the above-captioned because the South Carolina Department of Mental Health is not a living person who happens to be to a state official. *Ex parte Young*, 209 U.S. 123 (1908) (recognizing exception to immunity where plaintiff seeks prospective relief against a state official in his or her official capacity to prevent future violations). The Eleventh Amendment bars this case even though the plaintiff seeks only prospective relief. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 58 (1996) ("But we have often made it clear that the relief sought by a plaintiff suing a State is irrelevant to the question whether the suit is barred by the Eleventh Amendment.").

***Statute of Limitations***

The defendants acknowledge that the plaintiff is entitled to the benefit of the holding in *Houston v. Lack*, 487 U.S. at 276, because he is involuntarily confined (doc. 32-1 at 9). *See Deans*, 2013 WL 6054481, at *4. The earliest possible *Houston v. Lack* delivery date for the complaint is January 8, 2015, the date the plaintiff signed the complaint (doc. 1 at 5). The defendants argue that the claims relating to the lower denture are time barred because the claims arose in 2009 or accrued, at the latest, on January 4, 2011, the date on which the Department Mental Health denied the plaintiff's grievance appeal on the lower denture (*see* doc. 32-2 at 3, ¶ 8; doc. 32-2 at 37).

In civil rights cases filed in the District of South Carolina, this court must apply South Carolina's general personal injury statute of limitations. *See Wilson v. Garcia*, 471 U.S. 261, 265–80 (1985) (in § 1983 actions, federal courts should apply a state's general statute of limitations for personal injuries). South Carolina's applicable personal injury statute of limitations is codified at S.C. Code Ann. § 15-3-530 (2015), which establishes a three-year limitations period for causes of action arising on or after April 5, 1988. *See Hoffman v. Tuten*, 446 F. Supp. 2d 455, 459 (D.S.C. 2006). Hence, even assuming that the plaintiff's claims on the lower denture accrued on January 4, 2011, or were tolled until January 4, 2011, the plaintiff had until January 6, 2014, to bring a timely civil rights action concerning the lower denture.[2] Similarly, the plaintiff was moved to the Columbia Regional Care Center in 2009, so the time for the plaintiff to bring a timely civil rights action relating to his transfer expired in 2012.

The defendants properly raised the statute of limitations defense in the answer (doc. 26 at 2, ¶ 7) and in the memorandum in support of the motion for summary

---

[2]January 4, 2014, was a Saturday, so the plaintiff had until Monday, January 6, 2014, to bring a timely civil rights action relating to the lower denture. *See* Fed. R. Civ. P. 6(a)(1)(C).

judgment (doc. 32-1 at 9–10).   Hence, summary judgment should be granted to the defendants.  *Martin v. Miley*, Civil Action No.  6:13-cv-3516-TMC-KFM, 2015 WL 1862829, at *7 (D.S.C. Apr. 23, 2015) (case should be dismissed as untimely when defendant asserts statute of limitations defense both in answer and in memorandum in support of motion for summary judgment), *appeal dismissed*, No. 15-6769, 610 F. App'x 322 (4th Cir. July 28, 2015); and Fed. R. Civ. P. 8(c)(1) (requiring that a statute of limitations defense be raised in a responsive pleading).

### Professional Judgment Standard

The Supreme Court has held that claims by involuntarily-committed mental health patients are not evaluated under the Eighth Amendment or the Fourteenth Amendment because they are not convicted or detained prisoners.  *See Youngberg v. Romeo*, 457 U.S. 307, 321–22 (1982) ("Persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish.").   Instead, lower federal courts should apply the professional judgment standard:

> We think the standard articulated by Chief Judge Seitz affords the necessary guidance and reflects the proper balance between the legitimate interests of the State and the rights of the involuntarily committed to reasonable conditions of safety and freedom from unreasonable restraints.  He would have held that "the Constitution only requires that the courts make certain that professional judgment in fact was exercised. It is not appropriate for the courts to specify which of several professionally acceptable choices should have been made."

*Youngberg*, 457 U.S. at 321; *see also Patten v. Nichols*, 274 F.3d 829, 842 (4th Cir. 2011) ("Nothing in the nature of a denial-of-medical-care claim or the interests of state officials in responding to a civilly committed patient's need for medical care warrants treating such claims under a standard different from the standard governing similar claims established by the Supreme Court in *Youngberg*.  We therefore conclude that denial-of-medical-care

7

claims asserted by involuntarily committed psychiatric patients must be measured under *Youngberg*'s "professional judgment" standard."); and *Dudley v. Food Service-Just Care*, 519 F. Supp. 2d 602, 608 (D.S.C. 2007) ("Although different from *Youngberg* in that the case *sub judice* involves food and nutrition rather than safety, and different from *Patten* because *Patten* involved the denial of medical care, because Plaintiff is not a prisoner or a pre-trial detainee, the court finds the standards of *Youngberg* applicable.").[3]

The plaintiff's continued placement at the Columbia Regional Care Center satisfies the professional judgment standard outlined in the three aforementioned cases. The plaintiff is eighty-four years of age and suffers chronic health issues.  Dr. Scaturo's affidavit discloses that the plaintiff is one of approximately five geriatric patients who are not kept at the BRCI "because their in-patient needs [] cannot be appropriately met at the BRCI facility" (doc. 32-2 at 2, ¶ 4).  Unlike the BRCI, "[t]he Columbia Regional Care Center provides a broad range of medical and psychiatric services including fall-time physician care, 24-hour skilled nursing coverage and assistance with activities of daily living as well as geriatric and hospice care." (*id.* at ¶ 3).

Under South Carolina case law, state agencies and departments are required to ensure the safety of geriatric detainees or prisoners.  *See Jackson v. South Carolina Dep't of Corr.*, 390 S.E.2d 467, 468–69 (S.C.Ct.App. 1989), *aff'd*, 397 S.E.2d 377 (S.C. 1990).  In light of the plaintiff's use of a walker (doc. 32-2 at 7, ¶ 19) and chronic health issues (*id*. at 45–50), the decisions to move the plaintiff to the Columbia Regional Care Center and keep him there satisfy the professional judgment rule set forth in *Youngberg*, *Patten*, and *Dudley*.[4]

---

[3]*Dudley* concerned the entity that currently operates the Columbia Regional Care Center (doc. 32-2, ¶3 ("Correct Care was formerly known as Just Care, Inc. and Geo Care of South Carolina, LLC.")).

[4]It is not necessary for this court to analyze matters pertaining to the failure to provide
(continued...)

The plaintiff's medical records indicate that he has been provided a soft food diet (doc. 32-2 at 45), is provided needed medications (*id*. at 47–48), and has been treated for obesity (*id*. at 50). Moreover, Dr. Scaturo's affidavit also shows that the plaintiff has been provided "outside food" and snacks by the SVPTP staff and Correct Care staff, and that the plaintiff has access to a canteen at the Columbia Regional Care Center (*id*. at 5–6). The plaintiff has also been provided treatment under the SVPTP (*id*. at 6). In fact, Dr. Scaturo's affidavit indicates that the "forensic examiner recommended Mr. Barfield for discharge" from the SVPTP.[5] *See Dudley*, 519 F. Supp. 2d at 609 ("The court thus finds the undisputed evidence reveals the Defendant exhibited both professional concern and judgment sufficient to satisfy the requirements of *Youngberg*.").

### Equal Protection

The Equal Protection Clause of the Fourteenth Amendment requires that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. This district court has relied on the decision of the United States Court of Appeals for the Fourth Circuit in *Morrison v. Garraghty*, 239 F.3d 648 (4th Cir. 2001), which was a prisoner case, in evaluating equal protection claims raised by persons who have been civilly committed. *See Gibson v. Scaturo*, Civil Action No. 2:13-3134-MGL, 2015 WL 4744563, at *6 (D.S.C. Aug. 11, 2015). To bring an equal protection claim, a plaintiff must first demonstrate that he or she has been treated differently from others with whom he or she is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination. *Morrison*, 239 F.3d at 654.

---

(...continued)
a lower denture to the plaintiff under the professional judgment rule because claims pertaining to the lower denture are untimely.

[5]Dr. Scaturo's affidavit indicates that the question of the plaintiff's discharge from the SVTP "will ultimately be determined by the courts pursuant to the SVP statutes" (doc. 32-2 at 6, ¶ 16). *See* S.C. Code Ann. § 44-48-10, *et seq*.

The defendants correctly note that the plaintiff has not shown that he has been treated differently from other SVP patients at the Columbia Regional Care Center. *See Deans*, 2013 WL 6054481, at*10 ("Plaintiff has not asserted that he is a member of a suspect class.   He has not shown that he was treated any differently than a similarly-situated SVPTP resident.").   The plaintiff cannot rely on the situation of civilly-committed patients at the BRCI because SVP patients at the BRCI are not "similarly situated" to the plaintiff. *See Treece v. Lominick*, Civil Action No. 3:08-3524-DCN, 2009 WL 2146754, at *3–4 (D.S.C. July 17, 2009). Accordingly, summary judgment is appropriate on this claim.

**Lack of Job**

In the memorandum in support of motion for summary judgment, the defendants contend that the South Carolina Department of Mental was not required to provide a job to the plaintiff (doc. 32-1 at 12–13).  In the defendants' reply, they additionally state that the plaintiff has had a job at the Columbia Regional Care Center since January 2015 (doc. 41 at 4 n. 1).

Since the plaintiff seeks only prospective relief, matters relating to the plaintiff's lack of a job are now moot. *Incumaa v. Ozmint*, 507 F.3d 281, 286–88 (4th Cir. 2007); and *Breeden v. Jackson*, 457 F.2d 578, 580 (4th Cir. 1972); *see also Steffel v. Thompson*, 415 U.S. 452, 459 n. 10 (1974) ("Mootness can kill a lawsuit at any stage.").

**New Matters**

In his response in opposition to the motion for summary judgment, the plaintiff raises matters pertaining to a shake down and  matters pertaining to the medication Lipitor. These issues were not raised in the complaint and cannot be considered in a response to a motion for summary judgment. *White v. Roche Biomedical Labs., Inc.*, 807 F. Supp.

10

1212, 1216 (D.S.C.1992) (noting that "a party is generally not permitted to raise a new claim in response to a motion for summary judgment").

## **CONCLUSION AND RECOMMENDATION**

Now, therefore, based upon the foregoing,

IT IS RECOMMENDED that the District Court grant the defendants' motion for summary judgment (doc. 32).  The attention of the parties is directed to the notice on the next page.

s/ Kevin F. McDonald
United States Magistrate Judge

October 20, 2015
Greenville, South Carolina

11

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (*quoting* Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk of Court**
**United States District Court**
**300 East Washington Street — Room 239**
**Greenville, South Carolina 29601**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).